UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID P. BARTON, JR.

       Plaintiff,

      v.　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**
　　　　　　　　　　　　　　　　　　　　　　　　**3:08-CV-0810 (FJS)**
MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant,

## I.　Introduction

Plaintiff David P. Barton, Jr. brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be granted in part and Defendant's cross-motion for judgment on the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.

1

pleadings be denied.[3]

## II.   Background

On July 21, 2005, Plaintiff, then 39 years old, filed an application for SSI and DIB, claiming disability since April 13, 2005, because of a back injury (R. at 57-61. 69, 72, 175-78).[4] His application was denied initially on December 22, 2005 (R. at 29-35, 179). Plaintiff filed a timely request for a hearing on January 26, 2006 (R. at 36).

On December 5, 2007, Plaintiff and his attorney appeared before the ALJ (R. at 181-206).The ALJ considered the case *de novo* and, on February 28, 2008, issued a decision finding Plaintiff was not disabled (R. at 15-26). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on May 29, 2008 (R. at 4-6). On July 25, 2008, Plaintiff filed this action disputing his disability determination.

Based on the entire record, the Court recommends remand because the ALJ improperly assessed the treating physician's opinions, the disability analyst's report, and Listing 12.05(C).

## III.   Discussion

### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

---

[5] This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B. Analysis**

    **1.**     **The Commissioner's Decision**

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act (R. at 26). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2005, his alleged onset date of disability (R. at 20). At step two, the ALJ found that Plaintiff had the following severe impairments: borderline intellectual functioning and chronic lumbar strain (R. at 20-21). At step three, the ALJ concluded that because "the record did not evidence deficits in the claimant's adaptive functioning" he did not meet the criteria for Listing 12.05(C) (R. at 21) At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform unskilled work; to lift and carry twenty pounds occasionally and ten pounds frequently; to stand or walk six hours a day; to sit six hours a day; and to push or pull up to twenty pounds occasionally and up to ten pounds frequently (R. at 21). In reaching this RFC, the ALJ considered Plaintiff's testimony but found his statements "not credible to the extent they are inconsistent with the [RFC] assessment" (R. at 22). In formulating Plaintiff's RFC, the ALJ also gave the following weight to opinion evidence: "some weight" to the opinions of Dr. Albert Kochersberger, a workers compensation physician; "some weight" to the opinions of Dr. Pranab Datta, a consultative physician; "some weight" to the opinions of the disability analyst, A. Kinney; "limited weight" to the 2007 opinion of Plaintiff's treating physician, Dr. Sae-Joun Park; "greatest weight" to Dr. Park's 2005 opinion that Plaintiff could lift and carry twenty pounds occasionally, sit for six hours, and push and pull without limitation, but rejected the portion of Dr. Park's 2005 opinion that Plaintiff could only

stand and walk two hours a day; and "some weight" to the opinions of Dr. Robert Russell, a consultative psychologist (R. at 23-24). The ALJ then found that Plaintiff could not perform his past relevant work as a retail stocker because the work required lifting more than twenty pounds (R. at 25). At step five, the ALJ found that Plaintiff was a younger individual, with a limited education, and capable of performing the full range of light work (R. at 25). Therefore, the ALJ concluded that Plaintiff was not disabled under Medical Vocational Rule 202.17[6] (R. at 25). In the alternative, the ALJ noted that if she had accepted Dr. Park's opinion and found Plaintiff capable of only sedentary work, he would be not disabled under Rules 201.24[7] and 201.18[8] (R. at 26).

### 2. Plaintiff's Claims

Plaintiff argues that (a) the ALJ erred in granting weight to the non-medical opinion of the disability analyst (b) the ALJ erred in assessing the treating physician's opinions; (c) the ALJ improperly assessed whether his impairments met Listing 12.05(C); and (d) the ALJ improperly applied the Medical-Vocational Guideline Rules because Plaintiff has non-exertional limitations resulting from his borderline intellectual functioning, which the ALJ failed to consider. Plaintiff's Brief, pp. 5-12.

### a. The ALJ Erred in Weighing the Opinions of the Disability Analyst

---

[6] Medical-Vocational Guideline Rule 202.17 requires a finding of not disabled when a claimant is a younger individual (18 to 49 years old), has a limited education or less, and has unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.17.
[7] Medical-Vocational Guideline Rule 201.24 requires a finding of not disabled when a claimant is a younger individual (18 to 44 years old), has a limited education or less, and has unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.24.
[8] Medical-Vocational Guideline Rule 201.18 requires a finding of not disabled when a claimant is a younger individual (45 to 49 years old), has a limited education or less, and has unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.18.

Plaintiff argues that ALJ erred in giving weight to the non-medical opinion of the disability analyst. Plaintiff's Brief, p. 10-12. Defendant argues that the ALJ did not err because she acknowledged that the analyst's opinion was not from a medical source. Defendant's Brief, pp. 18.

The regulations clearly define a medical opinion as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). Thus, the opinion of a disability analyst, who has no medical training, is not entitled to evaluation as a medical opinion. While all relevant evidence in a claimant's record must be considered, the regulations prescribe a particular process for considering medical opinions. 20 C.F.R. §§ 404.1527(b)-(e). Unless the treating source's medical opinion is given controlling weight, the ALJ will "consider all of the [listed] factors in deciding the weight [to] give to any medical opinion." 20 C.F.R. § 404.1527(d).[9] In this case, the ALJ acknowledged that the disability analyst was "a non-medical source who did not personally examine the claimant," but nonetheless found the analyst's opinions were "generally supported by the evidence of record" and therefore gave the analyst's opinion "some weight" (R. at 23). In effect, the ALJ treated the disability analyst's opinion as a medical opinion. It is worth noting that the ALJ gave equal consideration—i.e. "some weight"—to the opinions of Dr. Kochersberger, a workers compensation physician; Dr. Datta, a State orthopedic examiner; and Dr. Russell, a psychologist for the State's

---

[9] The listed factors include: whether the medical source examined the claimant; whether the source has a treating relationship with the claimant; the length, nature, and extent of any treating relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; whether the opinion relates to the sources area of specialty; and other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(1)-(6).

7

Vocational and Educational Services for Individuals with Disabilities ("VESID") office (R. at 23-24). The Court concludes that it was error to grant the disability analyst's opinion "some weight," as if it were a medical opinion. See Bennett v. Astrue, 2009 WL 1035106, at *12 (N.D.N.Y. April 17, 2009) (finding error where the ALJ "assigned 'significant weight' to the opinions of the disability analyst"); Hopper v. Comm'r of Soc. Sec., 2008 WL 724228, at *10 (N.D.N.Y. Mar. 17, 2008) (finding no error where the ALJ did not afford the disability analyst any weight as "the assessment was not a medical source opinion entitled to any weight"); see also Arteaga v. Astrue, 2007 WL 2402871, at *17 (S.D.N.Y. Aug. 15, 2007) (finding the ALJ's statement that a disability analyst was entitled to medical weight erroneous).

### b. The ALJ Failed to Apply the Proper Legal Standard in Assessing the Treating Physician's Opinion and Her Conclusions are not Supported by Substantial Evidence

Plaintiff also argues that the ALJ erred in assessing the treating physician's opinions. Plaintiff's Brief, pp. 9-12. Defendant argues that the ALJ properly weighed the treating physician's opinions. Defendant's Brief, pp. 16-18.

In this case, Plaintiff's treating physician, Dr. Sae-Joun Park, submitted a completed "Medical Report" form provided by the State agency, dated August 30, 2005 (R. at 110-14) and a "Residual Functional Capacity Questionnaire" dated October 30, 2007 (R. at 141-43). In 2005, Dr. Park concluded that Plaintiff could lift and carry twenty pounds occasionally, stand and walk up to two hours per day, sit up to six hours a day, and had an unlimited ability to push and pull (R. at 113). In 2007, Dr. Park opined that Plaintiff could lift and carry up to ten pounds continuously, stand up to one hour each day for fifteen minutes at a time, walk up to one hour a day for fifteen minutes at a time,

and sit for up to two hours a day at thirty minute intervals (R. at 143). Prompted by the ALJ, Plaintiff's attorney wrote to Dr. Park requesting an explanation for the differences between the 2005 and 2007 assessments (R. at 103-04). In response, Dr. Park wrote that "the discrepancy between the evaluations dated 8/05, and 10/07 is due to the change in condition of this patient" (R. at 174).

After carefully reviewing the record, the Court concludes that the ALJ erred in assessing the treating physician's opinions. The ALJ failed to grant Dr. Park's 2005 opinions controlling weight, despite finding "Dr. Park's August 2005 opinion was generally consistent with the minimal objective medical evidence, the claimant's treatment regimen, and the other opinions of record" (R. at 24). The treating physician rule requires an ALJ to give controlling weight to a "treating source's opinion[s] on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). In this case, the ALJ essentially found that Dr. Park's August 2005 opinion met the legal standard, and yet failed to grant the opinion controlling weight. Although the ALJ gave Dr. Park's 2005 opinion "great weight" with the exception of the stand and walk limitation, she failed to explain why the opinion was not entitled to controlling weight, as required by the regulations. 20 C.F.R. §. 404.1527(d)(2)(requiring controlling weight be given to qualifying treating physician's opinions and that the ALJ give "good reasons" for the weight given). The Court concludes that the ALJ failed to apply the proper legal standard, necessitating remand. Johnson, 817 F.2d at 986 ("Where there is a

reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

The ALJ's analysis was also flawed because she rejected Dr. Park's specific August 2005 opinion that Plaintiff was limited to standing or walking only two hours a day. The ALJ reasoned that the opinion was "inconsistent with the claimant's April 2005 return to work without restriction" (R. at 24). However, substantial evidence of record does not support this finding. To the contrary, an examination of the whole record reveals that although Dr. Park initially sent Plaintiff back to work only weeks after his April 2005 injury, Plaintiff's pain quickly recurred prompting Dr. Park to remove Plaintiff from work again. (R. at 107, 109, 115-16, 118). For the next several months Dr. Park noted that Plaintiff's condition was "improving slowly," although he noted Plaintiff was still limited (R. at 110-14, 118, 147-48).  On October 11, 2005, Dr. Park noted a sudden recurrence of Plaintiff's pain "for no apparent reason" (R. at 149). After October 2005, Dr. Park found no improvement in Plaintiff's condition and he repeatedly noted Plaintiff's pain and limitations in reaching, sitting, lifting, carrying, pulling, standing, and walking (R. at 153-70). The record also documents clinical examinations revealing Plaintiff's declining ability to bend forward. Plaintiff initially improved from a limit of forty-five degrees of flexion to ninety degrees, but his flexion decreased again to forty-five degrees and by 2007 it decreased to only thirty degrees (R. at 108, 120, 145-46, 166, 170). The findings of Dr. Datta, the orthopedic consultative examiner, also support Dr. Park's contemporaneous  findings (R. at 119-22). In December 2005, Dr. Datta found

that Plaintiff had "great difficulty" walking on his toes, could squat only twenty-five degrees with one hand holding the table for support, could bend forward forty-five degrees, backward only five degrees, had moderate tenderness over the lumbar spine, tenderness in the left paralumbar muscles, sciatic notch tenderness, positive straight leg raise testing at only thirty degrees, though "not reproducible in seated position," and impaired touch sensation in the L4 and L5 dermatomes (R. at 120).The ALJ's finding—that Dr. Park's two-hour stand and walk limitation was contradicted by the April 2005 return to work order—essentially relies on Plaintiff's initial attempt to return to work weeks after his injury in April 2005 and ignores evidence that Plaintiff's condition worsened and caused him to quickly discontinue working. Therefore, the ALJ's rejection of Dr. Park's August 2005 stand and walk opinion is unsupported by substantial evidence of record.  Furthermore, the Court notes that the evidence of Plaintiff's deteriorating condition calls into question the ALJ's rejection of Dr. Park's 2007 opinion. The ALJ gave Dr. Park's more restrictive 2007 opinion "limited weight" because she rejected his explanation that Plaintiff's condition had changed since 2005 (R. at 24). However, the evidence as described above indicates that Plaintiff's condition did change, as asserted by Dr. Park. Therefore, on remand the ALJ must also reconsider Dr. Park's 2007 opinion.

    Because the ALJ's findings are unsupported by substantial evidence the Court recommends remand, On remand, the ALJ must apply the proper legal standard to analyze the treating physician's opinions, being sure to assess whether the opinions are supported by medically acceptable diagnostic techniques and "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1257(d).

### c. The ALJ Improperly Evaluated Listing 12.05(C)

Plaintiff argues that he met the requirements of Listing 12.05(C). Plaintiff's Brief, pp. 5-9. Impairments listed in Appendix I of the regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity; therefore, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). Listing 12.05(C) states in pertinent part:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[10]
> The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.
> . . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). Thus, to meet Listing 12.05(C) Plaintiff must show (1) below average intellectual function with adaptive functioning deficits manifested before age 22 and continuing during the claim period, (2) a valid IQ score of 60 through 70, and (3) an impairment, other than his low IQ, that imposes "an additional

---

[10] To meet Listing 12.05, a claimant must satisfy this introductory paragraph, sometimes called the diagnostic description or a capsule definition, in addition to the criteria in one of the subparagraphs. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) ("If your impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets [Listing 12.05].").

and significant work-related limitation of functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C).

In the case at bar, the Commissioner concedes that Plaintiff meets the second and third requirements: "plaintiff has demonstrated an IQ of 70" and has "a severe physical impairment." Defendant's Brief, p. 12. However, the Commissioner argues that Plaintiff does not meet the diagnostic description—below average general intellectual functioning with adaptive functioning deficits, which evidence demonstrates existed before age 22. Defendant's Brief, p. 12. The ALJ agreed, reasoning that Plaintiff did not meet Listing 12.05(C) because "the record did not evidence deficits in the claimant's adaptive functioning" (R. at 21). The ALJ's analysis of Plaintiff's adaptive functioning continued:

> The claimant can meet his own personal care needs, was able to obtain and maintain employment for extended periods of time and at substantial gainful activity levels, and did not recall any problems with his work performance at his previous jobs (Exhibits 4F and 7F, page 4; and Testimony). At his December 5, 2007 hearing, the claimant indicated that his level of intellectual functioning did not cause problems during his years of employment (Testimony). Upon psychological evaluation, in August 2007, psychologist, Robert Russell, Ed.D, noted the claimant's "fair work history suggesting fair adaptive functioning." (Exhibit 7F, page 6). Consequently, the requirements of listing[] . . . 12.05 were not satisfied.

(R. at 21).

After carefully reviewing the record, the Court concludes that substantial evidence does not support the ALJ's finding that Plaintiff lacked deficits in adaptive functioning. At least one court has concluded that the term "deficits in adaptive functioning . . . . denotes an inability to cope with the challenges of ordinary everyday life." Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) (citing Diagnostic and Statistical

13

Manual of Mental Disorders-IV 42 (4th ed. 2000) (hereinafter DSM-IV)) (finding the Plaintiff could overcome the challenges of everyday life where she lived on her own, took care of at least three children without help and without having them removed from her custody, paid her bills, and avoided eviction). Another court found "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." West v. Comm'r of Soc. Sec. Admin., 240 Fed. Appx. 692, 698 (6th Cir. 2007) (unpublished decision).

     In this case, the record shows that Plaintiff has deficits in adaptive functioning. The record shows that he lives with his mother; has likely always lived at home; does not drive and always depended upon his now deceased father to drive him to work (R. at 137); cares for his own personal grooming and makes some of his own meals, but does not independently shop, clean, or perform any other activities of daily living (R. at 87, 119, 199, 203); dresses in a "childlike manner" such as in a spiderman t-shirt and a superman cap; has only one friend (R. at 137); does not have any hobbies or social activities (R. at 88); attended special education classes through the tenth or eleventh grade when he left school at the age of twenty (R. at 76, 137); has "quite limited" social skills (R. at 139); "is basically illiterate and has very limited math ability"; may be slow to learn new tasks; and "his pace and reliability may be below that of his peers" (R. at 139).

     The ALJ's analysis failed to address any of this evidence, which indicates that Plaintiff had deficits in several areas of adaptive functioning, including daily living, academics, and social skills. Instead, the ALJ focused exclusively upon Plaintiff's adequate adaptive functioning in the areas of work and personal hygiene (R. at 21). The

Court concludes that in this case the ALJ's failure to assess evidence contrary to her conclusion is error because the regulations clearly state that the ALJ must assess all relevant evidence. 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00(D) (stating that when considering mental impairment listings, the ALJ "will consider all the relevant evidence in a case record"). The Court recognizes that an ALJ need not always "reconcile explicitly every conflicting shred of medical evidence." Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir, 1983). However, the ALJ's failure to address the substantial evidence of record indicating that Plaintiff had deficits in adaptive functioning suggests that the ALJ treated adequate functioning in one or two areas as excluding evidence of clear deficits in other areas. The Court finds no support for such an approach.

Although the Commissioner has not defined the term "deficits in adaptive functioning" the plain language of the regulations does not require a complete lack of adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C); see generally Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983) ("The claimant need not demonstrate that he is completely helpless or totally disabled."). Indeed, the American Psychiatric Association's criteria for mental retardation require deficits or impairments in adaptive functioning in only two out of eleven areas. DSM-IV 49 (4th ed. 2000) (listing areas of adaptive functioning as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety). Although the Commissioner has not adopted the DSM-IV criteria, the Commissioner has stated that the mental retardation Listing allows the use of any of the diagnostic methods endorsed by the four major professional organizations. 67 Fed. Reg. 20018-01, at 20,022 ("SSA's definition

establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations."). Since none of the methods endorsed by the major professional organizations require deficits in all areas of adaptive functioning or a complete lack of adaptive functioning, the term "deficits in adaptive functioning" must allow for adaptive functioning in some areas, as long as deficits are present in other areas of functioning. See Id. (describing the mental retardation criteria for each professional organization).

In this case, the Court concludes that the ALJ's failure to assess all the relevant evidence of record is error and necessitates remand. In light of the evidence indicating Plaintiff's deficits in several areas of adaptive functioning, the Court also concludes that substantial evidence of record does not support the ALJ's conclusions at step three. While the ALJ cited evidence that Plaintiff functioned adequately in a work setting, the Court notes that Listing 12.05(C) does not require a claimant to never have worked. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). Indeed, a claimant who meets the first two requirements of the Listing could work for many years before acquiring an "additional and significant" impairment which satisfies the third and final element of the Listing, rendering him unable to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (requiring (1) "subaverage general intellectual functioning with deficits in adaptive functioning"; (2) a valid IQ score of 60 through 70; and (3) an "additional and significant" severe impairment).

On remand the ALJ should assess all the relevant evidence, and request additional evidence as needed. 20 C.F.R. § 404.1512(f) (explaining that the ALJ will order consultative examinations "If the information [the Commissioner] need[s] is not

readily available from the records of [the claimant's] medical treatment source, or [the Commissioner] [is] unable to seek clarification from [a] medical source,"); see (R. at 139) (indicating that Dr. Russell suggested Plaintiff receive further testing because he only administered abbreviated tests); (R. at 48) (showing Plaintiff's attorney requesting the ALJ order intelligence testing and evaluation for Plaintiff). Because the Court has concluded that substantial evidence does not support the ALJ's findings with respect to Listing 12.05(C), the Court need not reach Plaintiff's remaining arguments with respect step three.

### d.  The ALJ's Remaining Analysis Was Necessarily Flawed

Because the Court has concluded that the ALJ failed to properly assess the disability analyst's opinion, the treating physician's opinion, and Listing 12.05(C), the ALJ's remaining analysis is necessarily flawed. See 20 C.F.R. § 4040.1520(a)(4) (describing the sequential evaluation process). Therefore, the Court need not reach Plaintiff's remaining arguments.

### IV.  Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings in accordance with this recommendation. Respectfully submitted,

*[signature]*

Victor E. Bianchini
United States Magistrate Judge

DATED: November 23, 2009
Syracuse, New York

**Orders**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

*/s/ Victor E. Bianchini*
Victor E. Bianchini
United States Magistrate Judge

DATED: November 23, 2009
Syracuse, New York